# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5777-14T3

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

D.H.,

    Defendant-Appellant,

and

J.H.,[1]

    Defendant.

_____

IN THE MATTER OF R.H. and
B.H., minors.

_____

Submitted February 28, 2017 — Decided  June 2, 2017

Before Judges Espinosa and Suter.

---

[1] No findings were sought against the children's father, J.H., who was named as a defendant for dispositional purposes only.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-306-13.

Joseph E. Krakora, Public Defender, attorney for appellant (Kimmo Z.H. Abbasi, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Melissa Dutton-Schaffer, Assistant Attorney General, of counsel; Jennifer A. Lochel, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Karen Ann Lodeserto, Designated Counsel, on the brief).

PER CURIAM

Defendant D.H. (Debra)[2] appeals from an adjudication of abuse and neglect as to her two minor children, R.H. (Ron), born August 5, 1998, and B.H. (Beth), born May 28, 1997. She argues there was insufficient evidence to support this conclusion. We disagree and affirm.

I.

To support a finding of abuse and neglect, the Division of Child Protection and Permanency (the Division) must prove by a preponderance of "competent, material and relevant evidence," N.J.S.A. 9:6-8.46(b), that the parent failed

> to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or

---

[2] We use fictitious names to protect the privacy of the parties.

allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .

[N.J.S.A. 9:6-8.21(c)(4)(b).]

A parent fails to exercise a "minimum degree of care" when the parent engages in conduct that is "grossly or wantonly negligent, but not necessarily intentional." N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 305 (2011) (quoting G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 178 (1999)). Such misconduct occurs when "an ordinary reasonable person would understand that a situation poses dangerous risks and acts without regard for the potentially serious consequences . . . ." Id. at 306 (quoting G.S., supra, 157 N.J. at 179). Each case of alleged abuse "requires careful, individual scrutiny" and is "generally fact sensitive." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 33 (2011).

II.

The allegations in this case concern an incident involving Ron that occurred in October 2012, which followed an incident one month earlier involving Beth. The amended verified complaint filed by the Division recited its substantial prior history with Debra. The first referral occurred in March 2009, when Linda, a child who has since reached majority, ran away from home after

arguing with Debra about Debra's drug use. During the period between that first referral and the 2012 incidents, there were a number of referrals that related to Debra's history of substance abuse and mental illness and included allegations that Debra beat Beth. There was also a prior adjudication of substantiated abuse and neglect against Debra.

At the fact-finding hearing, N.J.S.A. 9:6-8.44, the Division presented records that included: (1) the investigation summary dated September 9, 2012; (2) a police report dated September 9, 2012; (3) a drug screen dated September 18, 2012 and (4) an investigation summary dated October 12, 2012, all of which were admitted without objection.

The September 2012 investigation summary detailed the Division's response to the family home, where they met with Debra, Beth, Linda, and Ron. The caseworker reported observing Debra to be "very intoxicated," with slurred and delayed speech, balance that "appeared to be off" and a disheveled appearance.

The day before, Debra called the police for medical assistance and, when the person who reported the incident to the Division arrived, Debra told him Beth and Linda had "jumped her." While at the home, the reporter was informed "[Debra] attacked [Beth] and she attempted to strangle her with her hands," which was corroborated by an observation "that the child has scratches to

her neck and some bruising." Linda helped Beth get Debra off her, and Debra sustained a bump to her forehead. The reporter was advised this was the first incident of this nature, and Debra "gets emotional" when she drinks, which she had been doing more of recently due to marital issues. "[Linda] reported her mother has been drinking with her prescribed medications which are causing her to act aggressively."

Debra was arrested for simple assault, N.J.S.A. 2C:12-1(a)(1), and released on her own recognizance. In his investigation report, Sergeant Robert Worrick noted Debra stated "she was 'jumped' by her two daughters," but she "kept changing her story as to how and why she was 'jumped.'" He observed Debra "was slurring her words and swayed back and forth as she spoke. Her [eyelids] were slightly open and her eyes were red." Linda had reported to him that Debra and Beth were "arguing about family issues" when Debra "began to throw objects around the living room." Linda told Sgt. Worrick that Debra "smashed a glass vase onto the floor" then "grabbed [Beth] by the throat and threw her against the wall." Linda pushed Debra away and, during the struggle, elbowed Debra in her forehead. Beth advised Sgt. Worrick "she did not lose consciousness and she was able to breathe during the struggle." Sgt. Worrick observed "multiple scratches and a little bruising" on Beth's neck.

In her statement for the police, Linda asserted Debra had "consumed a fair amount of liquor" and attacked Beth because she felt "disrespected." Beth wrote out her own statement:

> I, [Beth], told my mom, [Debra] that I was holding her money because she was WASTED. So of course she yelled and complained and told me to give it back. I was out of line and disrespected her verbally so she decided to pick up a "glass" vase (It was huge by the way) & throw it at me. We moved it cut my finger and the back of my leg & it cut my sister's toe and butt cheek. Then she decided to choke me up on the wall & I punched her to get her off me then we fought 2 more [times] . . . . Then you guys come.

The Division had Debra undergo a urine drug screening. She tested positive for marijuana, benzodiazepines and opiates. The Division substantiated allegations of physical abuse because Beth "sustained scratches to her neck when [Debra] attempted to strangle her." Beth stopped living with her mother after this incident.

The referral that is the basis of this appeal occurred approximately one month later, on October 10, 2012. Debra called 911 and said Ron attacked her with a knife. When the police arrived, they observed self-inflicted scratch marks on her chest and determined she had not been attacked with a knife. They were told Debra hit Ron in the eye, but Ron had no visible injuries and did not appear to be in pain. Both the person who reported the incident and the responding police officer stated Debra appeared

6

to be under the influence of alcohol. The reporter also stated Debra "carries a butcher knife on her and she sleeps with it."

Ron was interviewed by Division worker Chandra Edwards and gave the following account. He hides his Xbox games to prevent his mother from returning them to the store for money to buy liquor, but his games were nevertheless missing when he arrived home from school earlier that day. After Debra told him "somebody must have come in and stolen them," Ron went to the maintenance office to ask whether anyone had broken into his home. He was told Debra was "lying to him again."

Ron told Edwards he did not see the liquor Debra was drinking, but "[h]e said she was stumbling and slurring her words and he could just tell." He also reported Debra "overdoses" on her medicine and has been drinking "a lot" of vodka and beer since Beth left in September. Ron asserted he did not stab his mother earlier and that his mother pushed his face, though he had no marks or bruises.

When Edwards and Division caseworker Theodore Gibson interviewed Debra on the following day, she "appeared to be under the influence of a substance" but denied taking medication. They observed Debra's "thoughts were extremely unorganized" and her "speech appeared to be slurred as though she was under the

influence." Debra stated, however, that she was prescribed Vicodin and Neurontin for her multiple sclerosis.

She asserted she returned Ron's Xbox games the day before because he was not doing his homework. She told the caseworkers Ron "threw her against the wall and then followed her into her bedroom and threw her on the bed and scratched her on her chest." The caseworkers observed the scratches and noted they "appeared to be thin and [uniform]."

The caseworkers re-interviewed Ron, who gave an account largely consistent with his prior statements. He affirmed Debra was "drunk and stumbling around" when he came home from school. He asserted she threatened to throw his Xbox through the window, but he grabbed it from her hand, causing her to stumble into a wall. She then went into her room for three minutes. Knowing that Debra keeps a butcher knife under the mattress and recalling she has thrown the knife at him and other family members when she is drunk, Ron took the knife when she emerged from the bedroom. He stated Debra told him "she does not want him and wants DYFS to take him away." Ron stated Debra "is always drunk and he has witnessed her 'popping pills' and drinking at the same time." He expressed a wish to stay with his aunt "as he feels safe in her care" and "he is fearful of what his mother may try to do to him."

He advised "he loves his mother, but does not feel safe around her."

Debra testified in her own defense. She testified that she returned three of Ron's Xbox games after receiving a call from his school that Ron had not been doing his homework. She stated Ron "threw a tantrum," would not calm down and grabbed a knife from the kitchen but did not stab her or approach her with the knife. She denied there had been any altercation or struggle or telling the police Ron stabbed her. She explained the scratches on her chest were from Ron's nails, but she was "quite sure [that] was an accident."

On cross-examination, Debra testified she was not intoxicated that day. She explained that her multiple sclerosis causes speech impairment, such as slurring, when she is stressed, but she did not explain why she might have been "swaying back and forth" as noted in the police report. When confronted with her positive urine screen, she said, "I don't see how I tested for marijuana." She explained that, at the time, she had been prescribed Clonazepam, Prednisone, Hydrocodone, Neurontin, and "different medications." She testified she does not drink alcohol while on medication and denied taking her medication or drinking alcohol on the two days she engaged in altercations with Beth and Ron.

A-5777-14T3

The Division called Gibson as a rebuttal witness. He refuted Debra's testimony, stating Debra told him Ron had cut her and showed him the marks on her chest. He further testified her speech was slurred and she appeared disorganized and nervous.

The family court cited Ron's statement, Gibson's testimony and report, and the police report as evidence that supported the conclusion that Debra was under the influence of alcohol during the October incident. The court did not find credible Debra's denials and explanation that her slurred words, swaying, and disorganization were attributable to her medical condition. The court found that Debra's voluntary intoxication led to a "pretty serious altercation" with Ron that justified a finding of abuse and neglect. The court held the Division sustained its burden of proving Debra "failed to ensure the health, safety and welfare of the children by being under the influence of drugs and alcohol and therefore [did] not provide proper supervision."

Debra argues the evidence of intoxication was insufficient because expert testimony was necessary to establish that she was under the influence of alcohol or drugs. This argument lacks merit. Lay opinion may be used to establish whether a person was intoxicated; expert opinion is not necessary. See State v. McLean, 205 N.J. 438, 457 (2011). "[T]he average witness of ordinary intelligence, although lacking special skill, knowledge and

experience but who has had the opportunity of observation, may testify whether a certain person was sober or intoxicated." State v. Bealor, 187 N.J. 574, 585 (2006) (citation omitted). There was ample evidence to establish that Debra was under the influence of intoxicating substances and that her intoxication impaired her parenting ability.

Finally, Debra argues her actions should be excused because they were taken in response to Ron's "extreme behavior" as a "misbehaving child." Debra's false report to the police that Ron stabbed her in the chest was not an appropriate disciplinary response to any misbehavior by Ron. To the contrary, Debra's behavior was consistent with her prior assaultive behavior against both Beth and Linda. Moreover, although we note the trial judge found her testimony not credible, Debra denied there was any altercation at all.

We conclude the Division proved by a preponderance of the evidence that Debra engaged in conduct that was grossly negligent, warranting an adjudication of abuse and neglect. N.J.S.A. 9:6-8.21(c)(4)(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5777-14T3